DUFRESNE, Judge.
This is an appeal by Church-Dailing Company, Inc., plaintiff-appellant, from a summary judgment in favor of Loop Inc., defendant-appellee, in a suit to enforce a ma-terialman’s lien. Because we find no error in the finding that no such lien existed, the judgment in favor of Loop Inc. is affirmed. However, because the judgment also appears to have improperly dismissed R.J. Grush Co., Inc., a co-defendant, the judgment is amended and remanded so as to permit Church-Dailing to proceed with its suit against Grush.
*760 The basic facts are as follows:
In 1979, Loop sought bids for construction of a gantry crane to service its cavity manifold system. This manifold system is a collection of pipes and valves which distributes crude oil from eight underground storage caverns into some fifty connecting pipelines. The system is built on land leased by Loop, near Galiano, Louisiana. It covers an area approximately sixty by one-hundred feet. Loop installed a rail on either side of the one-hundred foot axis upon which the crane was to move back and forth. J.R. Grush Co., Inc. was the successful bidder for the crane, and constructed it in its shop in Slidell.
As the attached diagram (Exhibit No. 1) shows, the crane itself is simply an inverted U shaped structure with wheels at the base of each of its legs which roll on the rails. A trolley which can move from side to side rests on top of the main cross beam of the crane. Attached to the trolley is a fifteen ton hoist which raises and lowers a cable and hook. The entire apparatus is electrically powered. By moving the crane back and forth along the rails, and the trolley from side to side along the crane, the hoist can be positioned over any part of the manifold system which needs to be serviced.
Shortly after being awarded the contract for the crane, Grush bought the fifteen ton hoist from Chureh-Dailing. It was delivered to Grush in October or November, 1980. Church-Dailing’s $28,000 bill for the hoist was never paid by Grush. However, Loop paid Grush the contract price for the entire crane, including the hoist. When the components of the crane were delivered to Loop in May, 1982, for final installation, Chureh-Dailing filed a materialman’s lien against Loop’s manifold system. Shortly thereafter, Grush initiated bankruptcy proceedings in federal court. When Loop refused to pay Chureh-Dailing for the hoist, this suit was filed to enforce the material-man’s lien.
Loop answered and moved for summary judgment on the grounds that the hoist was a movable when purchased by Grush, and that it remains a movable because it is not permanently attached to any immovable owned by Loop. In support of this motion, Loop filed the affidavit of William Jennings, its manager of maintenance and engineering at the manifold system operation. Jennings stated therein that the hoist was readily identifiable and attached to the crane by bolts. He further stated that the hoist could be detached from the crane by loosening the bolts and disconnecting the power cables, and that this procedure would cause no substantial damage to either the hoist or the crane.
In response to Loop’s motion and affidavit, Chureh-Dailing filed only a memorandum in opposition to summary judgment. Nowhere in this memorandum or in any other pleadings, answers to interrogations, or admissions on file does there appear anything to bring into question the facts sworn to by Jennings as to how the hoist was attached or what damage would result from its removal.
After a hearing, the trial court found that there was no issue as to any material fact and ruled that Loop was entitled to summary judgment as a matter of law. In his reasons for judgment, the trial court relied on two alternate theories. The first was that the manifold system is not a building, but rather an “other construction”. Because that construction is not owned by the owner of the ground, it is a movable, La.Civ.Code, art. 464 and comment (c) and therefore no lien will lie against it under La.R.S. 9:4801 et seq., because such liens arise only against immovables. The second theory is that if the manifold system were to be considered a building, the hoist did not become a component part of that building because it can be removed without substantial damage to itself or to the thing to which it is attached, La.Civ.Code art. 466. The hoist therefore remained a movable and could not give rise to the material-man’s lien as provided in La.R.S. 9:4802(A)(3).
Chureh-Dailing now appeals alleging that summary judgment was improper because *761 there were not sufficient uncontested facts in the record to establish that:
1.) the manifold system was an “other construction”, rather than a building, and;
2.) the hoist could be removed without substantial damage to itself or to the thing to which it is attached.
Because we find that the hoist remains a movable rather than a component part of the manifold system, we need not decide here whether that system is a building or another construction.
We first address the question of whether there were sufficient uncontested facts in the record to establish that the hoist is not permanently attached to the crane. It is not contested here that the threshold issue in this case is whether the hoist became a component part of the manifold system so as to trigger the operation of La.R.S. 9:4802(A)(3). Under La.Civ.Code art. 466, component parts of buildings or other constructions are things permanently attached to them. A thing is permanently attached when it cannot be removed without causing substantial damage to itself or to the building or other construction to which it is attached.
The first inquiry here is therefore to determine how the hoist is attached to the crane. By way of affidavit, filed with Loop’s motion for summary judgment, Jennings swore that it is attached by bolts which may easily be removed, and is powered by an electric source which can readily be disconnected. He further stated that this removal would not cause substantial damage to the crane or the hoist.
In response to this motion for summary judgment and affidavit, Church-Dailing did not come forward with any contrary affidavits or evidence to cast doubt on these assertions, Henderson v. Administrators of Tulane University, 426 So.2d 291 (La.App. 4th Cir.1983), nor is there anything in the record to suggest that Jennings’ description of the manner of attachment was incorrect. Moreover, the only response made by Church-Dailing was a memorandum in opposition wherein it argued that the hoist became an immovable “notwithstanding the fact that [it] could be unbolted for repair and/or servicing”. It further argued that “facility” of removal was not dispositive of the classification of the thing as a movable or immovable. In effect then, Church-Dailing has admitted that Jennings’ affidavit is correct as to the manner of attachment of the hoist, and that it can be removed without damage to itself or the crane.
Given these acts, the legal question is whether the hoist is a component part of the crane, cf. Yiannopoulos, Louisiana Civil Law Treatise, 2, Property, § 96. It is clear to this court that it is not. Because the hoist can easily be removed without damage to itself or the crane, it is not a component part of the crane, La.Civ.Code, art. 466, par. 2, and we so hold.
The final issue here is whether the suit against Grush was improperly dismissed. It appears from the record that Grush has not yet answered the petition of Church-Dailing. Obviously, then, they could not have been dismissed. Although it is not clear that the judgment does dismiss Grush, out of caution we hold that Grush remains a party defendant to this suit, and remand the case so that Church-Dailing may pursue whatever remedies it might have against Grush.
For the foregoing reasons, the judgment dismissing Church-Dailing’s suit against Loop is affirmed. That portion of the judgment which appears to dismiss Grush is amended so as to continue Grush as a party defendant, and the case is remanded to permit Church-Dailing to continue their suit against Grush.
AFFIRMED IN PART, AMENDED IN PART AND REMANDED.

*762