617 So.2d 13 (1993)
Mrs. Doris RICHOUX Individually and as Survivor of her Deceased Son, Leroy Richoux
v.
TULANE MEDICAL CENTER, Dr. Yuji Numaguchi and Dr. Carl Culicchia.
No. 92-CA-0531.
Court of Appeal of Louisiana, Fourth Circuit.
March 30, 1993.
*14 Avram C. Herman, Herman & Herman, Metairie, for plaintiff/appellant.
Joseph J. Lowenthal Jr., David R. Nicholson, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendants/appellees.
Before CIACCIO, ARMSTRONG and WALTZER, JJ.
ARMSTRONG, Judge.
Plaintiff, Doris Richoux, instituted this wrongful death and survival action grounded in medical malpractice against defendants, Tulane Medical Center (TMC), Dr. Yuji Numaguchi and Dr. Carl Culicchia. Plaintiff alleged in her petition that the care and treatment given by defendants to her deceased son, Leroy Richoux, fell below the standard of care of hospitals and physicians in this community. Defendants filed a motion for summary judgment which was granted by the trial court, dismissing plaintiff's claims. Plaintiff now appeals. We affirm.
On or about January 9, 1986, plaintiff's decedent, Leroy Richoux, was admitted to Tulane Medical Center where he was scheduled to undergo a "balloon embolization for a left carotid cavernous sinus fistula," a condition which was the result of a December 1985 motor vehicle accident. In her petition, plaintiff alleged that Dr. Numaguchi, a neuro-radiologist, successfully obliterated the fistula during the operation, but had to stop the procedure after a balloon being used in the operation ruptured. Dr. Numaguchi stopped the procedure and advised plaintiff and other family members that a California physician would be coming to New Orleans to repeat the procedure in two to three weeks. The petition alleges that on February 21, 1986, Leroy Richoux suffered a hemorrhage from the left carotid cavernous sinus fistula and bled to death from the nose and mouth.
Plaintiff filed a claim under the Louisiana Medical Malpractice Act, La.R.S. 40:1299.41, et seq., alleging malpractice on the part of the defendants. In an opinion issued on September 6, 1988, a medical review panel issued an opinion finding that the evidence did not support the conclusion that defendants failed to meet the applicable standard of care. Plaintiff subsequently filed this action on October 25, 1988. Interrogatories were propounded to plaintiff *15 by defendant Dr. Culicchia on November 21, 1988, and defendants Tulane Medical Center and Dr. Numaguchi, seeking, among other information, the names of any experts who would testify concerning defendants' alleged negligence and/or malpractice. On February 20, 1990, defendants TMC and Dr. Numaguchi filed a motion to compel plaintiff to respond to their interrogatories.
On May 31, 1990, TMC and Dr. Numaguchi filed their first motion for summary judgment, alleging that plaintiff responded in her interrogatories that she had no expert witnesses to call. Therefore, defendants maintained, plaintiff could not produce the evidence necessary to support a suit for malpractice; there was no genuine issue of material fact and they were entitled to judgment as a matter of law. The trial court subsequently denied the motion for summary judgment.
On June 11, 1991, defendant Dr. Culicchia filed a motion for summary judgment. Attached to his memorandum in support of his motion was the deposition of Dr. Kenneth E. Vogel, a neurologist. Dr. Vogel stated in his deposition that the treatment of Leroy Richoux by Dr. Culicchia, TMC and Dr. Numaguchi did not fall below the applicable standard of care. Thereafter, on August 16, 1991, TMC and Dr. Numaguchi filed a second motion for summary judgment.
On August 28, 1991, plaintiff filed a motion to dismiss Dr. Culicchia from the lawsuit. On that date plaintiff also filed amended answers to interrogatories propounded by TMC and Dr. Numaguchi. In these amended answers plaintiff identified a neurosurgeon it planned to call as a witness. On September 23, 1991, one year after it denied the first motion for summary judgment, the trial court granted the second motion for summary judgment filed by TMC and Dr. Numaguchi. On October 22, 1991, plaintiff filed a motion for new trial and notified defendants TMC and Dr. Numaguchi that she had set a deposition of her neurosurgeon witness for October 25, 1991. Defendants subsequently filed a motion to quash the deposition. The trial court delayed consideration of the motion to quash the deposition and, on January 27, 1992, denied the motion for new trial, essentially rendering moot consideration of the motion to quash the deposition.
On appeal plaintiff claims the trial erred in (1) granting the motion for summary judgment and, (2) failing to "adequately address" plaintiff's motion for new trial and scheduled deposition of its expert physician.
La.C.C.P. art. 966(A) provides that a plaintiff or a defendant in the principal or any incidental action, with or without supporting affidavits, may move for summary judgment in his favor for all or part of the relief for which he is entitled. Appellate courts review summary judgments de novo, under the same criteria that govern the district court's consideration of whether summary judgment was proper. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La. 1991). La.C.C.P. art. 966(B) provides that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with supporting affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. Osborne v. Vulcan Foundry, Inc., 577 So.2d 318 (La.App. 4th Cir.1991).
Under La.C.C.P. arts. 966 and 967, however, the burden is upon the mover to show the absence of genuine issues of material fact. Frazier v. Freeman, 481 So.2d 184 (La.App. 1st Cir.1985). Courts must closely scrutinize the papers supporting the position of the mover, while treating the papers of the party opposing the motion indulgently. Ortego v. Ortego, 425 So.2d 1292 (La.App. 3d Cir.1982), writ den., 429 So.2d 147 (La.1983). All doubts must be decided in favor of trial on the merits even if grave doubt exists as to a party's ability to establish disputed facts at trial. Osborne v. Vulcan Foundry, Inc., supra.; Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068 (La.App. 3d Cir.1985).
La.R.S. 9:2794 provides that in a malpractice action based on the negligence of a *16 physician "the plaintiff shall have the burden of proving:"
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians... within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
In a medical malpractice action, opinions of expert witnesses who are members of the medical profession and who are qualified to testify on the subject are necessary to determine whether or not physicians possessed the requisite degree of knowledge or skill, or failed to exercise reasonable care and diligence. Frasier v. Department of Health and Human Resources, 500 So.2d 858 (La.App. 1st Cir. 1986); Steinbach v. Barfield, 428 So.2d 915 (La.App. 1st Cir.1983), writ denied, 435 So.2d 431 (La.1983).
In Fortenberry v. Berthier, 503 So.2d 596 (La.App. 4th Cir.1987), a physician charged with malpractice filed a motion for summary judgment. Supporting documents established that the plaintiffs possessed only two expert opinions, (1) that of the medical review panel which had found no negligence on defendant's part and, (2) the opinion of an expert which was "generally favorable" to the defendant physician. The only experts the plaintiffs intended to call as witnesses at trial were the members of the medical review panel. Considering these facts and whether summary judgment was proper, we stated:
This established that plaintiff's [sic] could produce no expert testimony to support the malpractice suit in accordance with R.S. 9:2794. In our opinion, these undisputed facts entitled [the physician] to judgment as a matter of law.[1]
In the instant case, when defendants moved for summary judgment in June 1990, they attached to their motion plaintiff's answers to their interrogatories in which plaintiff stated that the only expert witnesses she intended to call were the members of the medical review panel. Together, the members of the panel had rendered an opinion finding that the evidence submitted to it did not support the conclusion that defendants failed to meet the applicable standard of care. The opinion of the medical review panel was also attached to defendants' motion for summary judgment. The opinion of a medical review panel is admissible as expert evidence in a malpractice suit. See Derouen v. Kolb, 397 So.2d 791 (La.1981); Renegar v. Matthews, 456 So.2d 690 (La.App. 5th Cir.1984), writ denied, 460 So.2d 608 (La.1984).
One year later, defendants filed a second motion for summary judgment. At the time they filed this second motion for summary judgment, plaintiff had not supplemented her answers to defendants' interrogatories as to any additional experts she intended to call as witnesses. In addition, at the time this second motion was filed, the record contained the deposition of Dr. Kenneth Vogel, a neurologist and member of the medical review panel, who stated in the deposition that it was his opinion that TMC and Dr. Numaguchi did not breach the applicable standard of care.
The trial court now had before it plaintiff's answers to defendants' interrogatories which did not identify any expert who would testify that defendants breached the applicable standard of care; the opinion of the medical review panel that the evidence did not support a finding that defendants *17 breached the applicable standard of care; and the deposition of Dr. Vogel in which he reiterated that it was his opinion defendants had not breached the applicable standard of care. At that point, defendants motion for summary judgment was properly supported and showed no genuine issue of material fact. The burden then shifted to plaintiff to set forth specific facts showing that there was a genuine issue of material fact precluding the granting of summary judgment. Fortenberry v. Berthier, supra; Henderson v. Administrators of Tulane University, 426 So.2d 291 (La.App. 4th Cir.1983), writ denied, 433 So.2d 160 (La.1983).
To defeat the motion for summary judgment plaintiff filed an opposition on August 28, 1991 stating that she had obtained an expert who would testify that the treatment of Leroy Richoux by defendants fell below the applicable standard of care. However, this was not an affidavit based on "personal knowledge" setting forth a fact admissible in evidence as contemplated by La.C.C.P. art. 967. At the same time, plaintiff also filed amended answers to defendants interrogatories naming the expert, Dr. Richard Levy. However, she filed no affidavits based on "personal knowledge" nor offered any depositions setting forth facts admissible in evidence. On September 23, 1991, the trial court rendered summary judgment in favor of defendants. Only after summary judgment was rendered did plaintiff set the deposition of the purported expert witness, Dr. Levy.
At the time the trial court ruled on the motion for summary judgment there were no genuine issues of material fact as to whether defendants breached the applicable standard of care and they were entitled to judgment as a matter of law. Plaintiff was resting merely on the allegations in her pleadings which were not sufficient to create a genuine issue of material fact. See Bank of Iberia v. Hewell, 534 So.2d 143 (La.App. 3rd Cir.1988).
Plaintiff also urges that the trial court erred in granting the motion for summary judgment because there was not a cut-off date for discovery. La.C.C.P. art. 966 provides that a defendant may file a motion for summary judgment "at any time." Theoretically, defendants could have filed their motion for summary judgment the day they were served with plaintiff's petition. As a practical matter, the only requirement is that the parties be given a fair opportunity to present their claim. See Simoneaux v. E.I. du Pont de Nemours, 483 So.2d 908 (La.1986).
Considering the facts and circumstances of this case, the trial court was under no obligation to deny or continue defendants' second motion for summary judgment. We find no abuse of the trial court's discretion in ruling on the second motion when it did.
Plaintiff also claims the trial court erred in not granting it a new trial. She also claims the trial court did not adequately address the issue of allowing her to take the deposition of Dr. Levy. La.C.C.P. art. 1433 authorizes a trial court to allow the taking of a deposition after a judgment has been rendered to perpetuate the testimony of witnesses for use in the event of further proceedings in the trial court. However, the article provides for specific procedures to be followed, including motioning the court for leave to take the deposition. In addition, the granting of such leave is discretionary with the trial court. Considering our discussion below concerning the denial of plaintiff's motion for a new trial, we are unable to say the trial court would have abused its discretion in denying plaintiff leave to take the deposition.
Plaintiff claims the deposition of Dr. Levy would have had some effect on the trial court's ruling on her motion for new trial. La.C.C.P. art. 1972 provides that a new trial shall be granted when the party has discovered new evidence she "could not, with due diligence, have obtained before or during the trial." We do not believe that the medical testimony of plaintiff's expert can be considered newly discovered evidence which could not have been discovered before or during trial. La. C.C.P. art. 1973 provides that a trial court may grant a new trial. Considering the circumstances in the instant case, we cannot *18 say the trial court abused its discretion in denying plaintiff's motion for a new trial.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] But, see contrary view, Brock v. Newman, 543 So.2d 84 (La.App. 1st Cir.1989).